## ROOT v. CATSKILL MT. RY. CO.

*(Circuit Court, S. D. New York. February 14, 1888.)*

NEW TRIAL—GROUNDS FOR TRIAL—FAILURE TO URGE DEFENSE ON.

In an action against a railroad company for injuries sustained by a passenger on one of its trains, occasioned by another car being kicked against the one she had entered, the defendant claimed that plaintiff was improperly in the car before the train was made up, and introduced considerable testimony as to prohibitions, publicly given to the passengers on the platform at the time, against entering a car until the train was made up. No exception was taken to any part of the charge, and no request made to charge that the plaintiff had the burden of affirmatively proving that there were no prohibitions against her entering the car, and that she consequently was rightfully therein. *Held,* that such question would not be considered on a motion for a new trial.

At Law. On motion for new trial.

*George W. Wickersham* and *C. S. McMichael,* for plaintiff.

*Cornelius Van Santvoord,* for defendant.

SHIPMAN, J. This is a motion by the defendant for a new trial of an action at law for damages to the plaintiff through the negligence of the defendant, as a common carrier of passengers. A very general statement of the plaintiff's case is that, on August 9, 1886, after her ticket had been purchased for her passage from Cairo to Catskill Landing, and after she had taken her seat in a car of the defendant upon her journey, the car in which she was standing was, through the negligence of the railroad company, violently hit or bumped by another car, which was then being coupled to her car; that she was thrown upon the floor by the force of the collision, and suffered injuries which eventually proved to be severe and permanent. Cairo is the terminus of the Cairo branch of the defendant's narrow-gauge railway. On the arrival of the afternoon train it returns to Catskill with its load of passengers about as soon as the return train can be conveniently made up; and, inasmuch as the statute of the state of New York requires that the baggage car should precede the passenger cars, it is always necessary that the train should be rearranged. This is usually done, and was done on the afternoon in question, in the following way: After the landing of the passengers by the up-train, and the removal of the gang-planks, which had been placed

between the cars and the platform, the locomotive was disconnected, was turned around upon a turn-table, was run past the train, was backed up, and coupled to what had been the rear end of the train, which was then hauled down to a point below a switch, and, subsequently, was re-arranged in front of the station platform. On the day of the accident the up-train consisted of a locomotive, baggage car, excursion car, and two "cushioned coaches." Without describing minutely the way in which the rearrangement was effected, one of the cushioned coaches was "kicked in" to the station,—that is, it was sent off alone, by a push from the locomotive, to the station,—the conductor being at the brake. The second coach remained in Cairo. The excursion car was next "kicked in" to the station, and coupled to the first coach. The engine was then attached to the baggage car, and, backing down with it to the other cars, the train was completed.

The plaintiff offered evidence, at the opening of her case, as follows: On the day in question, she, with her infirm father, mother, and husband went to the depot to take the return train. The tickets were purchased. The up-train was late. After it had arrived, and the cushioned coach had returned to the platform, the waiting passengers were told by some one or more, whom she did not know, and whether co-passengers or not it did not appear, to get on board; the car was parallel with the station platform, and apparently in the right place. A gang-plank extended from the car to the platform, across which she went and guided her father. After she was in the car, it was violently hit by the excursion car, which was being "kicked in." She was thrown down by the force of the concussion, and was seriously injured. The defendant's theory of the case was that the injury happened at a time when the plaintiff was improperly in the car, and before the train was made up for the reception of passengers, and in violation of the reasonable directions and prohibitions of the company, which the plaintiff either knew or ought to have known, if she gave ordinary heed to the known circumstances of the case; and much testimony was introduced in regard to prohibitions, publicly given at the time, to the passengers upon the platform, against entering a car until the train was made up. The jury were instructed that if the defendant had improperly, and against the known and reasonable regulations of the defendant, taken her seat in the car, in violation of its reasonable and known directions, and before the train was in readiness for her reception, and while abundant opportunity existed for her safely entering the car after it was announced to be in readiness, her conduct was what is called contributory negligence; and, for an injury which happened in the manner claimed by the plaintiff, the defendant would not be liable as a common carrier. The jury having returned a verdict for the plaintiff, the defendant moved for a new trial upon two grounds: *First*, that, it being incumbent upon the plaintiff to prove, as a part of her case, that she was lawfully in a car of the defendant, the burden of proof was upon her continually to maintain this allegation against all attacks; and, *second*, that the weight of evidence upon the question in issue largely preponderated in favor of the defendant.

It is true that it devolved upon the plaintiff, under the allegations of her complaint, to prove that she was lawfully a passenger in the car of the defendant, and that it had entered, at the time of the injury, which was occasioned by its negligence, upon the duties of a common carrier; and it is also true that this burden of proof did not leave her. She made a complete *prima facie* case, unless it can be successfully claimed that it is negligence *per se* to enter a detached car in the apparently proper position, and in apparently prepared readiness, with gang-planks, except that it was detached, at the time designated for the departure of the train, with the other passengers, and without known objection from the carrier. Such a claim cannot properly be made, for it is a fact, known to almost every traveler, that detached cars are often habitually placed, especially at intermediate stations, for the very purpose of receiving and accommodating passengers, and having the car in readiness to be attached to a train or locomotive which is soon expected to arrive. The defendant, not denying negligence if it was incumbent upon it to exercise extreme care, introduced another and distinct fact into the case, which was that the plaintiff took her seat in violation of the reasonable and known directions of the defendant, and thereafter the turning point in the case was whether there was a requirement that the passengers should remain upon the platform until the train was made up, and whether this requirement was one of which the plaintiff knew, or ought to have known, if she paid ordinary heed to the known circumstances of the case.

The cause was tried by both parties, and by the court, upon the principle that when the defendant, instead of denying what is alleged against him, relies upon some new matter which, if true, answers the plaintiff's case, he takes, also, the burden of sustaining the new matter, (1 Best, Ev. 497;) and it was assumed that the defendant took the burden of establishing this new fact, which, if it existed, convicted the plaintiff of contributory negligence.' The defendant tried the case upon the theory that the plaintiff's contributory negligence destroyed her right of recovery. The general principle in regard to contributory negligence which was laid down was in accordance with *Railroad Co.* v. *Horst*, 93 U. S. 291; 1 Whart. Ev. § 361.

No exception was taken to any portion of the charge, or to the admission of testimony, and no request of the defendant called upon the court to charge that the plaintiff had the burden of affirmatively maintaining that there were no prohibitions against her entering the car, and that she consequently was rightfully therein. I do not, therefore, consider that the question which the defendant now makes is one which I am called upon to decide.

Upon the remaining point, that the verdict was against the evidence in the case, I do not think that the defendant's point is so clearly established as to justify a new trial.

The motion is denied.