## UNITED STATES v. SEUFERT BROS. CO.

(Circuit Court, D. Oregon. February 9, 1897.)

Nos. 2,308–2,318.

1. EMINENT DOMAIN—DAMAGES.

In estimating the value of land taken for a public use, its value for such use is not to be considered. Boom Co. v. Patterson, 98 U. S. 403, distinguished.

2. SAME.

An estimate of the value of land taken for a public use should not be based upon the adaptation of the land to a special purpose, in the absence of anything to show a reasonable expectation of some demand at some time for the use of the land for that purpose.

3. NEW TRIALS—PRACTICE IN FEDERAL COURTS—STATE PRACTICE.

The discretion of the courts of the United States to grant new trials is not affected by state laws on the subject, and a new trial may be granted by a federal court for an error of law affecting a substantial right, though no exception has been taken to the ruling, and the error has not been urged on the hearing, and though a state statute requires an exception in such a case.

Daniel R. Murphy, U. S. Atty., and Charles J. Schnabel, Asst. U. S. Atty.

Alfred S. Bennett and Lionel R. Webster, for defendants.

BELLINGER, District Judge. This is a proceeding by the United States to condemn a right of way for a portage boat railway along the Columbia river, on the south side, between Celilo and Dalles City, to avoid the obstructions to navigation in the river known as "The Dalles of the Columbia." Two trials have been had. On the first trial the jury assessed defendants' damages at $25,087.50. Both parties moved for a new trial, which was granted as of course, without implying, however, that the court might not refuse the motion notwithstanding such an agreement. Upon the second trial the defendants' damages were assessed by the jury at $35,000. The United States moves for a new trial upon the ground that there were errors of law occurring on the trial, and that the verdict is excessive.

In the argument, the only error of law pointed out in support of the motion was the ruling of the court excluding evidence offered to show that, at a place on the line of the proposed boat railway not on the land of defendants, the existing appropriation by the Oregon Railway & Navigation Company occupied all the space between the bluff and the river. This evidence was intended to meet defendants' claim that the land taken had an especial value as a railroad right of way; the contention being that the availability of the land through this pass for railroad uses, and for the particular use, must be determined by its capacity for such use at the narrowest point in the pass, so that, if the pass was already fully occupied by a prior condemnation and road at any point through which a line must be located in order to reach defendants' land, the value of such land for right of way purposes would be thereby diminished. This evidence was not admitted because I was of the opinion that, in estimating the value of land taken for a public use, its value for such use is not

to be considered. The decision of the supreme court in Boom Co. v. Patterson, 98 U. S. 403, was thought not to apply to the case on trial, since the question of value there considered had regard to existing business wants, of which the owner might avail himself either on his own account or for general use. The use for which condemnation was sought in that case was for the construction of log booms in the Mississippi river adjacent to the lands condemned. The owner mig't use his land for this purpose on his own or on public account. The use was not necessarily a public one, and required no public license, so long as the navigation of the river was not obstructed. There is therefore no reason why the adaptability of the lands condemned for boom purposes was not a proper element to be considered in estimating the value of such lands.

The court, however, appears to give its approval to the case of Young v. Harrison, 17 Ga. 30, where land necessary for an abutment of a bridge was appropriated. The supreme court of Georgia held that the value of the land as a bridge site, in addition to its other capacities, should be allowed, in the estimate of compensation to be awarded to the owner, although such use, in the nature of things, was not available to the owner, but was exclusively in the public. If this is the true rule, then, in estimating the value of the land sought to be condemned in this case, its adaptability and value for right of way for a boat railway may be considered, although the owner cannot so use it, and there is no standard by which such value can be estimated. If, in condemning land for a bridge site, its "availability" as such site is a measure of value to be paid the owner, there is involved a consideration of the importance of the particular place to the intended use. In other words, the availability of the site is measured by the importance of the use, and in a matter of the greatest public concern a value so measured may be inestimable, and so the supreme necessity of the country to build defenses against its enemies become a measure of value, to be paid the owner whose land is taken for that purpose. The claim that the extent of the private interest to be taken is to include, in addition to all the uses available to the owner, the value, if that is possible of ascertainment, of the public interest to be served, is, in my opinion, without equity, and against public policy. Nevertheless, I was persuaded, further on in the case, by the apparent sanction given the case of Young v. Harrison by the supreme court, to allow witnesses to give their opinions as to the value of the land in question as a right of way for railroad uses, and instructed the jury, at defendants' request, that, if the land was especially adapted to the construction of railways, that fact must be taken into consideration in estimating its value. Upon this view of the question as to the measure of defendants' compensation, the court erred in sustaining defendants' objection to the testimony offered by the plaintiff to prove that, at different places along this portage of The Dalles, the entire available land was already appropriated and occupied by the Oregon Railway & Navigation Company, so that a second road could not be built without accommodations from that company, or the expenditure of very large sums of money in reclaiming portions of the river for a roadway. It

was shown that the proposed boat railway made it necessary to change the line and grades of the existing railroad at different points, in order that the jury might understand the inconvenience in getting fish to the cars for shipment, and the consequent damage to defendants caused by such changes. But the jury was not allowed to consider the availability of the pass, as a whole, for railroad purposes, in determining the availability of the particular portions in question.

It is argued, however, that this question is not involved in the ruling objected to, for the reason that the testimony excluded tended to show that there was not room for a third road, which question is immaterial, since there is now but one road through this pass. A witness having testified that at certain points the line of the existing railway and the ship railway will occupy the entire bottom, the question was asked, "How would it be on the land of Michell, or the land of The Dalles Packing Company?" To this the defendants objected, and the objection was sustained. If it is true, as claimed, that the entire pass on the premises named is now occupied by the Oregon Railway & Navigation Company's road, the answer to the question would likely have disclosed the fact. The question admits of such an answer. The objection made on the trial to the question is not the objection now made. The objection then was that the inquiry should be confined to defendants' land, and the correctness of this ruling is the question to be determined. As already suggested, the availability for railroad purposes of the particular portions of the pass sought to be condemned depends upon the availability of the pass as a whole. The inquiry might properly go even further, and so far as it relates to railroads, other than portage roads, extend beyond Celilo and The Dalles. Defendants contend that, inasmuch as no exception was taken to the ruling, it cannot be made a ground of a motion for a new trial, and that the state statute in that regard is to be followed here. The discretion which the courts of the United States have in the allowance of such motions cannot be affected by any state law upon the subject. Railroad Co. v. Horst, 93 U. S. 301. In a case where no exception was taken, the court might, in the exercise of its discretion, refuse, upon that ground, to allow the motion for a new trial; but, in a matter that appeals to the discretion of the court, an error of law affecting a substantial right should not be allowed to take refuge behind a technicality. The right of defendants to have the availability of their land for railroad purposes, by reason of the fact that it is so situated that any road down the valley of the Columbia must pass over it, considered as an element of value in this proceeding, was an important question in the case. Testimony was introduced by the defendants tending to prove that such land had a special value on this account of $100,000, and at defendants' request the jury was allowed to include such value in their estimate of value. If this ruling is not correct, there should be a new trial on that account. If it is correct, then the plaintiff should have been permitted to show that there are obstructions in the way of any road to be built along this route that detract from its avail-

ability as a whole, and therefore affect the particular parts in litigation.

Importance was given on the trial, by the defendants, to the adaptability of the land in question for railroad purposes, and much testimony was received tending to prove that it had a large value on that account, and it is probable that the verdict was influenced by such a consideration. Since the argument of this motion, I have carefully read all the evidence in the case, and find that there was, however, nothing tending to show that another road at that point could reasonably be anticipated; that there was any existing business want, or any reasonable expectation of a future want, of that character, except as to a boat railway. It does not appear that there is any probability whatever that this land will be available at any time for any other kind of road. The most that can be said as to this is that there is a possibility of such a thing. It is true that some of the witnesses for the defendants testified that this land had a market value for railroad purposes, but nothing was stated to support such an opinion, and the only reason given for it was the fact that a party of surveyors had at one time been engaged in surveying a portage railway line in the hills to the south of the defendants' premises. There was no basis whatever for the claim of value made on this account, and no evidence legitimately tending to support the instruction, given at defendants' request, that, "if the land sought to be condemned is especially adapted to the construction of railways," the jury must take such fact into consideration in estimating its value. An estimate of value based upon the especial adaptation of the land condemned to railway purposes is not warranted by the facts of the case, in the absence of anything to show a reasonable expectation of some demand at some time for the use of this land for that purpose. Without this, there is nothing to distinguish this land from any other land, no matter where located. The public agitation for the construction of a boat railway between Celilo and The Dalles, which has led to the location by the government of the present line, may tend to warrant a reasonable expectation of the construction of such a road. But, as has already been shown, the demand which is thus created cannot be considered in estimating the value of the land taken. The owner cannot avail himself of the adaptability of these lands to a boat-railway line, to enhance his recovery. The character and magnitude of such an undertaking, as a practical matter, takes it out of the field of private enterprise, if it is one in which such enterprise is authorized by law to engage. It is necessarily, therefore, a great public work, and must, so far as the question under consideration is concerned, be assumed to be within the exclusive province of the government. The owner of the lands condemned is wholly precluded by these conditions from the use which the government seeks to make of them. That use is in no way available to him. It is not a property right in him, and adds nothing to the value of which his lands are possessed, or to the advantages of which he will be deprived by the proposed appropriation. He is entitled to the full value of his

land considered with reference to all the uses, present and prospective, which he can or has the right to make of it; but the necessity of the government cannot be made a measure of his compensation.

I am also of opinion that the compensation awarded by the verdict is excessive, and the motion for a new trial should be allowed on that ground. It is argued that all the witnesses who testified as to value placed the amount above that found by the jury, and that there is no contradiction of this testimony. None of these witnesses estimated defendants' damages at less than $100,000, and some of them placed the damages at $150,000. These amounts are so far above what was found by the jury that it is apparent they could not have regarded this testimony. It was mere opinion evidence, based in large part upon conjecture. In arriving at their verdict the jury must have disregarded the opinions of these witnesses, and formed their own opinions from the facts in evidence, and these facts do not, in my judgment, warrant the finding made. Inasmuch as there must be a new trial upon the other grounds mentioned, it is unnecessary to comment upon these facts. The motion for a new trial is allowed.