CASE 83.—ACTION BY CHARLES PATTERSON'S ADMINIS-
          TRATOR AGAINST THE LOUISVILLE & NASH-
          VILLE RAILROAD COMPANY.—June 10, 1910.

·  Patterson's Admr v. L. & N. R. R. Co.  ·

Appeal from Bell Circuit Court.

W. T. DAVIS, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Af-
firmed.

Carriers—Injury to Passengers on Car Top—Liability of Carrier.—
      At the place from which a free train of 14 cars was to run,
      the cars being crowded, a number of persons, with the ac-
      quiescence of the conductor, went to the tops of the cars.
      By the jerking and bumping of the cars, caused by the slack
      being taken up as the train slowed down on reaching its des-
      tination, and without any negligence in its operation, two of
      such persons were thrown from the train.  Held, that this
      was due simply to a risk they had assumed, so that the
      carrier was not liable.

LEABOW & DeBUSK and HENRITZE & DAWSON for appel-
lant.

BENJAMIN D. WARFIELD, C. W. METCALF and J. W. AL-
CORN for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirm-
ing.

On April 21, 1908, a special train was run from
Middlesboro to Pineville to take persons to a political
convention held at Pineville on that day.  No fares
were collected on the train, and, as everybody went
free, there was a considerable crowd.  The train
consisted of three or four passenger cars, four or

five cabooses, and four or five freight cars; there being in all fourteen cars in the train. The cars were full, and a number of persons were riding on the top of the train when it pulled out from Middlesboro. Pineville is 12 miles from Middlesboro, and the persons on top of the train were riding on top of the cabooses or the freight cars. Charles Patterson, a coal miner 22 years old, was one of those on top of the cars. All went well until they reached Pineville. As the train was pulling into that station, it took up the slack, causing the rear cars of the train to jerk, and Patterson, who was riding on one of the rear cars, was by the jerk thrown therefrom and fell into Straight creek and was drowned. This action was brought to recover for his death; and at the conclusion of the evidence for the plaintiff the circuit court instructed the jury peremptorily to find for the defendant. The plaintiff appeals.

Some 10 or 15 witnesses were introduced by the plaintiff. They were on the train and felt the jerk. The sum of their testimony is that there was a considerable jerk of the train caused by the slack being taken up as it pulled up from Straight creek into the station. But, as there were 14 cars in the train and it was practically a freight train, on account of the number of cars that were in it, such a jerk was unavoidable, and was such as was fairly incidental to the operation of such a train when the slack was taken up. While there is some proof in the record that the train was operated roughly on the journey, the proof of all the witnesses as to what occurred at the time Patterson fell off is to the effect that the jerk was due to the taking up of the slack; that the train was pulling into the station, and was running at a reduced speed. There is nothing in the record

to show that the jerk was greater than was incidental to the movement of such a train, or that it was due in any measure to a want of care on the part of those in charge of the train. There is nothing in the record to show that the jerk was more violent than should have been anticipated by a person of ordinary prudence riding on such a train.

The plaintiff proved by one witness that he was on the station platform at Middlesboro with a number of others; that, while they were standing around there, the conductor said to them, "Boys, crowd it, crowd the train, go to the top;" that the witness then went to the ladder and went up on top of one of the cars, and that Charles Patterson came up right behind him. It is insisted that, as Patterson went up on the cars in obedience to what the conductor said, he was not guilty of contributory negligence in doing so, and that the company is therefore liable for his death. In support of this we are referred to the case of Indianapolis, etc., R. R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898. In that case a stock drover who had a right to transportation on a freight train which carried his cattle was riding in the caboose, and, when they had reached a certain point, the conductor in the night waked him up, telling him that they were going to leave the caboose there, and that he would have to ride to the next point on the top of the cars. He at the request of the conductor, got on top of the cars, and thus rode about three-fourths of a mile, when they undertook to couple the other caboose to the train, and in making the backward movement gave the train a terrible bump which knocked the drover from the top of the car upon which he was riding. A recovery was sustained. But in that case the drover was required by the conductor to get upon the top

of the car. He had to do this, or let his cattle go on without him. He had entered upon his journey, and was entitled to transportation as a passenger. The conductor was wrong in requiring him to leave the caboose and get on top of the car. But here the conductor required nobody to get on top of the car. His language meant that they must crowd the train or go on top. He required nobody to go on top, and the deceased and his companions evidently went on top of the train because they thought it was pleasanter riding there than in the crowded cars. It is true the conductor knew they were up there, and acquiesced in their riding there, but he did not require them to ride there, and when they voluntarily rode on the top of such a train, they took the risk of such jerking and bumping as are fairly incidental to the operation of the train run without negligence. The falling of the deceased from the train was due to the taking up of the slack when the train was not running at an unusual speed, and it does not appear that anything was omitted by those in charge of the train which they should have done. One of the plaintiff's witnesses who was one of the companions of the decedent on the train, being asked how the men happened to be on the top of the cars, said: "Why, they just climbed up. I don't know that anybody said climb on top. They just commenced going on top, and it seemed that all the coaches were full. Now, I couldn't say rightfully that they were obliged to go on top, but they just like to ride on top. A great many men love to ride on the top of the train." There were according to the evidence about 100 men on the top of the train. Only two of them fell off. The deceased, like the others who were with him, evidently went to the top of the train because he preferred to

ride there rather than in the crowded cars.   In doing so he took the risk due to this mode of travel, and there can be no recovery here in the absence of proof showing that the jerk from which he fell off was so violent as to show a want of proper care in the operation of the train.   This does not appear.  We therefore conclude that the death of the deceased was simply due to an accident from a risk which he had assumed in riding upon the top of the train, and that the circuit court properly instructed the jury peremptorily to find for the defendant.

Judgment affirmed.