City of Chicago, Appellee, v. Alfred O'Connor, Appellant.

Gen. No. 39,288.

576

Opinion filed February 15, 1938.

ALFRED O'CONNOR, *pro se;* THOMAS F. ALLMAN, of Chicago, of counsel.

BARNET HODES, Corporation Counsel, for appellee; MICHAEL L. ROSINIA and MARK J. MCNAMARA, Assistant Corporation Counsel, of counsel.

HIRAM T. GILBERT, of Chicago, *amicus curiae.*

MR. JUSTICE SCANLAN delivered the opinion of the court.

An action brought by the City of Chicago, in the Municipal Court of Chicago (hereinafter called Municipal Court), for the recovery of a penalty for a violation of section 7 of the Uniform Traffic Code of the City of Chicago. The trial court found defendant guilty and assessed a fine of three dollars. Defendant appeals.

The complaint charged that defendant, "whose address is 9207 Commercial Ave.," Chicago, on January 21, 1936, violated said section 7 by failing to obey "traffic sign or signal." Defendant, at the time of the

violation, was handed a "summons slip" by the police officer, directing him to report at Room 810 City Hall within 48 hours, which room is called, by defendant, the "Cafeteria Branch." Defendant disregarded the "summons slip," and a summons, returnable to the First District of the Municipal Court, issued. On the return day defendant appeared in person in the Traffic Court, located in the First District, where a complaint was filed against him, and the hearing of the cause was set for February 14, 1936.

Defendant, on February 7, 1936, filed a petition, which states, in substance, that "the offense for which he was arrested and received the summons . . . was committed at 89th Street and South Chicago Avenue in the City of Chicago . . .; that defendant resides in the Second District of the Municipal Court . . . and was arrested . . . in the Second District . . . and charged with the alleged offense" in that district; "that . . . there was then and is now, a judge of the Municipal Court . . . holding Court in the Second District, Branch 38 of the Municipal Court . . ., at 8855 Exchange Avenue, . . . and that the aforesaid cause should be tried in the Second District . . .; that said cause ought not to be had or maintained in the said First District for that the said Court is without jurisdiction . . .; that Section four of the Municipal Court Act reads . . .:" (Here follow the boundary limits of the Second District as fixed by section 4.) The petition further alleges that 89th street and South Chicago avenue, and Branch 38 are within that district. The stenographic report shows that the petition was overruled.

The common law record shows that defendant waived a trial by jury and the cause was submitted to the court. After judgment was entered defendant filed a written motion to vacate, which sets up, in substance, the averments contained in the petition, and states that after receiving the "summons slip" defendant wrote two letters to the Chief Justice of the Mu-

nicipal Court demanding and requesting that the cause be set for trial in the Second District because the violation happened in that district and defendant resides there; that the Chief Justice notified defendant, in writing, that the case had been set for hearing in Room 800, 1121 South State street, at 9:30 a. m., February 7, 1936, "and a summons to that effect is enclosed herewith;" that the said summons was issued by the clerk of the Municipal Court and it notified defendant "to personally appear before the Traffic Branch of The Municipal Court of Chicago, located at Room 800, 1121 S. State St., at 9:30 A. M. on February 7, 1936;" that at the time of the trial one of the judges of said court was hearing cases in the Second District. Defendant also filed a "Motion for New Trial," which contains, in substance, the averments set up in his petition and his written motion to vacate, and alleges that the Chief Justice lacked authority to order the cause tried in the First District. The court denied both motions.

After the City had concluded its evidence as to the alleged violation, defendant, a practicing lawyer, stated that he stood mute as to the charge, but that he denied the jurisdiction of the First District court to try the case. It appears from the stenographic report that defendant and certain other lawyers practicing in the Second District desired to have the "jurisdictional plea" interposed by defendant passed upon by this court, hence this appeal.

Defendant contends that the establishment of the "Cafeteria Court" and the practice followed in connection therewith is an unlawful delegation of judicial powers and an abuse of the rights of the citizen. The City contends that the practice followed was in accord with the provisions of Rule 10 of the court, and it argues that the rule was adopted to aid alleged violators of the traffic law; that it in no way prejudices their rights, but, on the contrary, is helpful to them;

and facts and statistics are submitted to us in support of this argument. It is a sufficient answer to defendant's contention to say that the sole question before us is, Had the trial court, sitting in the First District, jurisdiction to try defendant? Defendant ignored the so-called "summons slip" but appeared in the Traffic Court, located in the First District, after a formal summons, returnable to that court, had issued. In defendant's original brief he states that "the 'Cafeteria Court' and its procedure is not in any way pertinent to the issue before the Court."

The instant case is a quasi-criminal action. The Municipal Court is given jurisdiction of such actions and they are designated in the act as cases of the fifth class. Section 29 of the Municipal Court Act provides: "Cases of the fourth class mentioned in section two (2) of this act shall be brought and prosecuted in the district in which the defendant, if there be but one defendant, or one of the defendants, if there be more than one defendant, resides or is found . . . . When, upon the complaint of any defendant, it shall be made to appear to the Municipal Court in any district that the suit has been improperly brought therein, the court shall not be required on that account to dismiss the suit, if the Municipal Court in any district could properly have jurisdiction thereof, but in such case the court may cause such suit to be transferred to the proper district and the court in the district to which the same is transferred shall proceed therewith as if the same had been originally commenced in said district. . . ." Section 49 provides: "The *practice* in the Municipal Court in cases of the fifth class shall be the same, *as near as may be,* as is herein prescribed for civil cases of the fourth class . . . ."

Defendant contends that his petition is "a plea in bar to the jurisdiction of the Court," located in the First District; that "the question involved in this ap-

peal is whether a person who resides in, is arrested and receives a summons in the Second District of the Municipal Court of Chicago, for a violation of a city ordinance committed within said district, is entitled to be tried in the said Second District, under the Municipal Court Act''; that ''the question . . . is not a mere matter of practice but is one of statutory regulation governing territorial boundary lines with relation to jurisdiction.'' The City contends that a matter of *practice,* only, is involved in this appeal. It further contends that ''by the terms of Section 49 the extent to which *the practice* in fourth class cases should be applicable in quasi-criminal actions was only *'as near as may be,'* the meaning of which was to authorize the judges in such cases to disregard any provision of Section 29 which, in their opinion, would unwisely encumber the administration of the law, or tend to defeat the ends of justice, and that accordingly they had the right to provide for the trial of the defendant's case in the First District.''

Hiram T. Gilbert, the father of the Municipal Court Act, was permitted, as *amicus curiae,* to file a brief in this cause. He states that the phrase, ''as near as may be,'' in section 49 and other sections of the act, was taken from an Act of Congress passed in 1872, which provided that the practice in the Federal courts in common law cases should conform ''as near as may be'' to the practice in the State courts, and he cites *Indianapolis & St. L. R. Co. v. Horst,* 93 U. S. 291, where the court, in construing that phrase in the aforesaid act, said (pp. 300–301): ''The conformity is required to be 'as near as may be'—not as near as may be *possible,* or as near as may be *practicable.* This indefiniteness may have been suggested by a purpose: it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such State statutes which,

in their judgment, would unwisely encumber the administration of the law, or tend to defeat the ends of justice, in their tribunals.'' In support of the argument that the legislature and the legal voters of Chicago intended to vest in the judges of the Municipal Court a discretion which would enable them to vary from prescribed methods of procedure, our attention is called to a number of important sections of the Municipal Court Act in which the phrase in question is used, viz, section 50b, relating to proceedings to prevent the commission of crimes; section 50c, relating to preliminary examinations; section 50d, relating to search warrants; section 48, regulating the practice in the Municipal Court in relation to attachment, garnishment, replevin, distress for rent, and forcible detainer actions, and section 48a, regulating the practice in trials of right of property.

Defendant contends that the provision in section 29 ''that suit shall be brought and prosecuted in the district in which defendant resides or is found, and that where a suit is not brought in the proper district, it shall be transferred to a district of the Municipal Court which could properly have jurisdiction thereof, upon the complaint of any defendant,'' is a mandatory one, and that the phrase in question was not intended to permit the judges to adopt a rule which would, in effect, change that provision.

Section 49 provides that ''the *practice* . . . in cases of the fifth class shall be the same, *as near as may be,* as is herein prescribed for civil cases of the fourth class . . . .'' A reference to certain other sections will show that the legislature and the legal voters of Chicago intended to vest in the judges of the Municipal Court a discretion which would enable them to vary from prescribed methods of practice.

Section 19 of the act provides that, with certain specified exceptions, the practice shall be as near as may be that which may from time to time be prescribed

by law for similar suits or proceedings in the Circuit Courts, but it further provides that the Municipal Court shall be the sole judge of the applicability of the proceedings of the court and the rules of practice prescribed by law for similar cases in the Circuit Courts, and that the decisions of the Municipal Court in respect thereto shall not be subject to review upon an appeal or writ of error except when such review is necessary to prevent a failure of justice. No such claim can be made here. In *Ptacek v. Coleman,* 364 Ill. 618, the Supreme Court, in sustaining the validity of section 19 *and the power of the judges of the Municipal Court to regulate its practice by rules,* said (pp. 625–626): ''Manifestly, this provision of section 19 and all other practice provisions of the Municipal Court act are a part of the scheme for such local municipal government provided for by the constitutional amendment. It is equally obvious that this particular provision is embraced within the terms of the amendment authorizing the legislature to pass any law (local, special or general,) providing such a scheme. The provision was ratified by a referendum, as provided by the amendment, and its validity cannot be doubted.'' The court further held (p. 623) that ''the Municipal Court act is a special law; the Civil Practice act is general,'' and that the latter act does not apply to the practice provisions of the Municipal Court Act. Section 20 of the act, as amended in 1931, provides: ''That the judges of said municipal court shall have power to adopt, in addition to *or in lieu of* the provisions herein contained prescribing the practice in said municipal court, or of any portion or portions of said provisions, such rules regulating the practice in said court as they may deem necessary or expedient for the proper administration of justice in said court. . . . Amendments and changes of said rules may be made from time to time by like orders.'' At the time of the enactment of the

Municipal Court Act, section 20 contained the following proviso: *"Provided, however,* that no such rule or rules so adopted shall be inconsistent with those expressly provided for by this act. . . ." It is very significant that this proviso was eliminated by the amendatory act of 1931. As the Supreme Court states in the *Ptacek* case (p. 625): "It is to be noticed that by the amendment of section 20 in 1931 the power to adopt rules in lieu of the practice provisions contained in the act is specifically delegated to the court." Section 8 of the act provides that the judges "shall have power and *it shall be their duty* to adopt or cause to be adopted all such rules and regulations for the proper administration of justice in said court *as to them may seem expedient."* Section 52 provides: "That if the method of procedure in any case within the jurisdiction of the Municipal Court is not sufficiently prescribed by this act, or by any rule of court adopted in pursuance hereof, the court may make such provision for the conducting and disposing of the same as may appear to the court proper for *the just determination of the rights of the parties."*

Section 4 divided the court into five districts, the First, Second, Third, Fourth and Fifth, and specified the boundary lines of each district. It further provided: "The number and boundaries of the districts may be changed, from time to time, by orders signed by a majority of the judges of the Municipal Court, and spread upon the records thereof, which orders shall be published for three successive weeks, once in each week, in some newspaper of general circulation in the City of Chicago, and which shall take effect respectively within thirty days after the last publication thereof: Provided, however, no such change in the number or boundaries of districts shall become effective unless the order therefor shall have been approved by the City Council of the City of Chicago. As many

branch courts shall be held in each district as may be determined by the chief justice of said Municipal Court to be necessary for the prompt and proper disposition of the business of said court: Provided, however, that at least one branch court shall be held in each district. Such branch courts may be given such designation by number or otherwise as may be determined by the chief justice." The first annual report of the Municipal Court of Chicago for the year December 3, 1906, to November 30, 1907, states: "The division of the city into so many districts soon proved to be an impractical arrangement, and, in accordance with a provision contained in the Municipal Court Act, the judges of the court, on June 10th, 1907, entered an order abolishing the Third, Fourth and Fifth Districts, and rearranging the boundary lines of the First and Second Districts, which order was approved by the City Council on June 17th, 1907, and became effective July 15th, 1907." No change in the districts has since been made. Under section 4 the judges of the court, with the approval of the city council, have the power to abolish the Second District. There are many branch civil courts and criminal courts in the First District.

Section 1 of the act now provides that the court "shall be a court of record, . . . the jurisdiction of which shall be exercised in the manner hereinafter prescribed by branch courts, each of which shall exercise all the powers in this act declared to be vested in the Municipal Court."

We find force in the following statement in the brief of the *amicus curiæ:* "The establishment of the Municipal court with an organization, jurisdiction and practice different from the organization, jurisdiction and practice of other courts was a new scheme, largely experimental. It could not be foreseen how the provisions of the Act would operate in practice. The necessity of providing for changes in the methods of pro-

cedure was apparent. As changes by legislative action
required for their validity the consent not only of the
legislature but also of the legal voters of the city at
special or general elections, which might be a slow and
expensive process, it was wisely concluded to vest in
the judges a discretion which would enable them to
vary from prescribed methods of procedure 'which, in
their judgment, would unwisely encumber the admin-
istration of the law, or tend to defeat the ends of jus-
tice.' "

In defendant's reply to the brief filed by the *amicus
curiae* it is suggested that the City has not presented
to this court any rule or order of the Municipal Court
prescribing that cases like the instant one shall be tried
in the First District, and we should assume, therefore,
that there is no such rule or order. It is a sufficient
answer to this contention to state that defendant's so-
called plea in bar is based upon the theory that the
act confers upon the Second District sole jurisdiction
to try a case like the instant one, and that the only way
in which the judges of the Municipal Court could give
jurisdiction to the First District to try such a case
would be to abolish, with the concurrence of the city
council, the Second District. Defendant's position, in
the lower court and here, is that the legislature did not
vest in the judges of the Municipal Court authority to
abrogate or modify, by rules or orders, the provisions
of sections 4 and 5 of the act. The burden was upon
defendant to sustain his plea of a want of jurisdiction
in the court that tried him. We note in defendant's
brief the following: "The 'rules' of the Municipal
Court or of its Chief Justice are forcing the people
to come to some specialized court, no matter where the
case should be tried under the Municipal Court Act."
As the *amicus curiae* contends, this appeal involves a
question of practice rather than of jurisdiction. Sec-
tion 51 of the act provides: "That both in direct and

collateral proceedings the same presumptions shall be indulged with respect to the jurisdiction of the Municipal Court over the subject-matter of suits and over the parties thereto, and with respect to the regularity of the proceedings of said Municipal Court, as are indulged with respect to the jurisdiction and regularity of the proceedings of circuit courts in like cases.'' (See *Level v. Goosman,* 285 Ill. 347, 350, 351.)

After a careful consideration of the question involved, we have reached the conclusion that the Traffic Court, located in the First District, had jurisdiction to try the instant cause.

The motion of the City to dismiss the appeal, reserved to hearing, will be denied.

The judgment of the Municipal Court of Chicago is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.