## Case No. 2,372.

CAMPBELL et al. v. The UNCLE SAM.

[1 McAll. 77.][1]

Circuit Court, N. D. California. July Term, 1856.[2]

ACTION FOR EXTRA SEAMEN'S WAGES —PLEADING AND PROOF—TERMINATING VOYAGE—DISCHARGE —CONCLUSIVENESS OF CONSUL'S ACTS.

1. The libelants and respondents must recover and defend on their respective allegations and averments.
[See note at end of case.]

2. No defense to a breach of contract with the seamen can be available on the ground that the disturbed condition of the country to which the vessel was bound, authorized the breaking up of the voyage, if the condition of the country was the same as it was at the time of sailing, and had been so for some time previously.

3. The action of the consul in the discharge of seamen in a foreign port is not conclusive upon this court. The action of that officer in this case is adopted.
[Cited in The T. F. Oakes. 36 Fed. 446.]

Appeal from the district court of the United States for the northern district of California.

[In admiralty. Libel by Campbell and others against the steamship Uncle Sam for extra seamen's wages. There was a decree for libelants in the district court (Case No. 2,371), and the claimants of the vessel appeal.]

Glassell & Leigh, for appellants.
Crockett & Page, for respondents.

McALLISTER, Circuit Judge. In this case, as in every other, the libelants must recover on the allegations in their libel; and the respondents must rely exclusively on the grounds they have selected in their answer. Such is the rule recognized by the supreme court of the United States in Rich v. Lambert, 12 How. [53 U. S.] 347. The rigid enforcement of this rule is important in order to prevent surprise to either party. The allegations of the libel are, that the libelants shipped on board the Uncle Sam as seamen, signed shipping articles, and in pursuance thereof entered on board the said steamer on a voyage from San Francisco to San Juan del Sur; that on the 5th day of April, 1856, the Uncle Sam started from San Francisco on her proposed voyage, and instead of going to her destined port, she was carried into the port of Panama, where she arrived on the 20th day of April, 1856; that on the 24th day of May ensuing, the libelants were discharged by the United States consul at Panama, under the provisions of the act of congress in such case made and provided, and certificates of discharge given to libelants,

---

[1] [Reported by Cutler McAllister, Esq.]
[2] [Affirming Case No. 2,371.]

who subsequently worked their way from Panama to San Francisco. It further propounds, that libelants were entered on the crew list of the Uncle Sam; that no portion of the extra wages awarded by the consul have been paid, and that libelants are entitled to two months' extra pay, besides the wages due them up to the time of discharge, and twenty per cent. on the two months' extra wages, according to the acts of congress. The answer admits the shipment by the libelants, their signature of the shipping articles, the departure of the steamer at the time and on the voyage mentioned, the arrival of the vessel at Panama, and the discharge at that place of the libelants by the consul. It admits, that the voyage stipulated for was not performed, and defends the breach of contract on two grounds: first, the distracted condition of affairs and the military movements in Nicaragua, to a port of which country the vessel was originally destined; and, second, that the libelants were not entitled to their discharge, that they were discharged against the consent of the master, and that the proceedings of the consul in giving such discharge were not only illegal but fraudulent and covinous.

The question arising out of these pleadings is, whether the discharge of the seamen at Panama under the circumstances was legal. In relation to the disturbances at Nicaragua, on which the first ground is specially based, and which in substance is the foundation of the whole, the evidence ascertains that intermediate the starting of the steamer from San Francisco on the 5th of April and her arrival at Panama on the 20th, no change in the condition of things in Nicaragua as they existed at the former date had taken place. I agree in the conclusions of the district judge on this point: "If the convenience or the interests of the claimants induced them to make a change in the voyage for causes which did not fortuitously arise in the course of it, but existed before it commenced, I am unable to perceive on what principle the seamen can be held to a service essentially different from that which they contracted to render;" and, again: "The facts in this case abundantly show that the original voyage was broken up, and the contract with the seamen was dissolved."

Such being the conclusion, the court must consider that, released by the breach of the contract by the claimants, the seamen were entitled to their discharge according to the general principles of the law merchant, without the intervention of the consul at Panama. The acts of congress on this subject are cumulative, made for the protection of seamen, and with a view to afford them a prompt remedy; certainly not to withdraw them from the protection of the courts. Whatever had been the action of the consul, or the form of his certificate,—whether legal or illegal, regular or irregular,—it could not be conclusive upon this court, nor shut its door upon the libelants. In Hutchinson v. Coombs [Case No. 6,955] it is laid down that the certificate as to the discharge of a seaman will not preclude the court from inquiring into the cause of his discharge, and awarding damages if his discharge was unjustifiable. Whether the law under which the consul acted be constitutional or not; whether, if constitutional, the conduct of the consul was in strict accordance with it; whether his action was honest, or, as is alleged,—covinous, are not the subjects of inquiry. The question is, "Were the libelants entitled to their discharge?" After the breach of the contract by the claimants, and the detention of the libelants, arising out of that breach, for upwards of a month at Panama, I consider them entitled to such discharge.

It is proper to dispose of two objections urged by the proctor for respondents. It is urged that there is error in the court below in permitting the discharge of libelants at Panama by the certificate of the consul, which is not made evidence by law. A threefold answer may be given: First, it appears by the judge's notes on file that libelants proffered to establish their discharge by parol testimony, that respondents objected to its competency, and, upon their motion, it was ruled out by the court; second, no exception was taken in the court below to the admission as evidence of the consul's certificate; and third, the Exhibit A annexed to the answer, being the protest of the master, expressly admits the discharge, and only insists on its irregularity.

The second objection is, that there is no proof that the libelants were designated in the crew-list, as prescribed by law. Now, the allegation that they were so designated is made in the libel, and there is no denial of it in the answer. The crew-list is a document the possession of which the law fixes in the master. The silence of the master and of the respondents,—the one in his protest, the others in their answer,—is significant as to a fact presumed to be peculiarly within their knowledge. Not intending to assert as a rule that all allegations in the libel not denied in the answer are to be taken as true, the court considers, where there is silence or evasion in answers in relation to a particular fact supposed to be peculiarly within the knowledge of the responding party and which is alleged in the libel, that in such case it is within its discretion to take such fact pro confesso. In the exercise of such discretion the court will look carefully to the other facts proved in the case. In addition to the silence of the parties, I find, by looking at the judge's notes, that no objection was taken in the court below on this point; and in the protest of the master, filed in the cause, a minute enumeration of the reasons and causes for protesting is given. Among them, no intimation of the paper is given, the production of which, if libelants had not been properly designated on the crew-list, would

have been one of the causes relied on as proof of the irregularity of the discharge and assessment of damages. The court cannot consider the second ground taken as tenable.

As to the measure of damages: A uniform rule in cases like the present has been established by the legislation of congress, was acted upon by the consul, and by the district judge in this case, and which this court regards as correct. The decree of the district court of the United States is hereby affirmed, and a decree will be accordingly forthwith entered.

[NOTE. The proofs and pleadings in admiralty must conform. McKinlay v. Morrish, 21 How. (62 U. S.) 343; Kramme v. The New England, Case No. 7,930; The Sarah Ann, Id. 12,342; Ward v. The Fashion, Id. 17,154; The Rhode Island, Id. 11,745; Turner v. The Black Warrior, Id. 14,253; Soule v. Rodocanachi, Id. 13,178. But the strict common-law rules as to variance are not followed. Crawford v. The William Penn, Id. 3,373. And see The Clement, Id. 2,879, affirming Id. 2,880.]