THE W. F. BABCOCK.

GRAVES et al. v. THE W. F. BABCOCK.

(Circuit Court of Appeals, Second Circuit. March 2, 1898.)

1. SEAMEN'S WAGES—DESERTION—DEDUCTION.
  Where seamen left a ship without cause, were arrested and taken before a consul, declined to return to duty, made threats of violence if compelled to return, were abusive to the captain, and at his request were delivered to the custody of the marshal of the Hawaiian Islands, *held,* that the proper charges for their arrest and detention, the wages of their substitutes, and the amount which was necessarily paid by the ship to the authorities as a penalty for the malicious breakage of a shop window by the seamen on their way to the ship under custody, should be deducted from their wages.

2. SAME—PROOF OF DESERTION—CONSULAR ACTION.
  The fact that a sailor was arrested for desertion in a foreign port, was detained in jail by the local authorities, appeared before the consul, and was subsequently detained by the police, does not, in the absence of any record, and of any testimony from the consul, raise a presumption of a judicial investigation by the consul, and a finding of causeless desertion.

3. SAME—AWARD BY SHIPPING COMMISSIONER.
  An award by a shipping commissioner is not binding upon the parties unless made by authority of a submission in writing.

Appeal by the claimants of the ship W. F. Babcock from a decree of the district court for the Southern district of New York in favor of the libelants in a libel for seamen's wages. See 79 Fed. 92.

Eustis, Jones & Govin (Edward K. Jones, of counsel), for appellants.

Bodine & Lee (George C. Bodine, of counsel), for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The libelants, Thomas Graves, Christian Bauer, James Bradley, and Peter Donnelly, joined the ship W. F. Babcock at San Francisco on January 4, 1896, and, having signed regular shipping articles as sailors, sailed on that day upon a voyage to Honolulu, and thence to New York, or other final port of discharge. The ship reached Honolulu on February 2, 1896, left for New York on February 27th, and arrived on June 22d. The libelants reached Honolulu in debt to the ship. The pecuniary inducements to desertion at that port which are presented to sailors who are on board seagoing vessels are attractive, and consequently the captains of such vessels are on the watch to prevent it. On February 5th it was reported to the captain that Graves and Donnelly were missing, and that they had taken their clothes with them. On February 10th the same statements were made in regard to Bradley, and a similar report was made on February 20th in regard to Bauer. These alleged facts were promptly stated to the United States consul, who issued requests to the Hawaiian officials for the arrest of these men. They were arrested, and, after their apprehension, were detained in the station house until the vessel was ready to sail, when they were taken on board by the police, and thereafter served as sailors until she arrived in New York. Their previous debts to the ship, and the expenses which the captain was obliged to pay for rewards for their detection, for their arrest, detention, the wages of

laborers in their place, and for the willful breakage of a shop window by three of them, exceeded the amount of their wages; and payment by the owners was refused, except in the case of Bauer, to whom it was admitted that $7.65 was due. The libelants filed a libel against the ship to recover the entire amount of their monthly wages, less the advancements made before the arrival at Honolulu. In the district court the question at issue was that of desertion. All the libelants denied any intention to desert. The deposition of the consul was not taken, he gave no oral testimony, no record of his action was produced, but a certificate, signed by him, and under his seal, and dated January 19, 1897, was presented, which the court disallowed as evidence, because it was not a duly-proved copy of his record, and not a deposition. The certificate was as follows:

"I, the undersigned, consul general of the United States at Honolulu, Hawaiian Islands, do hereby certify that in the month of February, 1896, complaints were successively made to me by the master of the ship W. F. Babcock, of Bath, Maine, that Thomas Graves, Peter Donnelly, James Bradley, and Christian Bauer, of the crew of the said ship, had deserted the vessel, whereupon, at the request of the said master, I issued requests to the marshal of this government for the arrest and detention of these men, and they were afterwards brought before me; and it then and there having been made to appear to my satisfaction that the aforesaid complaints were true,—that the said seamen had, pursuant to the laws of the United States, duly signed a contract as seamen on said ship for a voyage from San Francisco to New York, via Honolulu: that the voyage agreed for was not finished or altered, nor the contract otherwise dissolved; and that the said seamen had deserted the said vessel, and absented themselves without leave,—whereupon, at the request of the said master, the said seamen were remanded to the jail at Honolulu, to remain there until the said vessel should be ready to proceed on her voyage, or till the master should require their discharge, and then to be delivered to the said master; he paying all the costs of such confinement, and deducting the same out of the wages due to said seamen. And I further certify that the reason for my action was because I was satisfied that unless they were so detained they would again desert. Witness my hand and official seal this 19th day of January, 1897."

The master testified, but the court was of opinion that his knowledge in regard to desertion was based upon hearsay, and depended upon the mate's reports, and that the evidence which was admitted did not establish the fact of the desertion, and was consistent with the theory that the men "were sent to jail on the master's complaint alone, without inquiring before the consul into the fact of desertion, either before imprisonment or afterwards"; and therefore all the items charged against the libelants, based upon the ground of alleged desertion, were disallowed. The mate left the ship in Honolulu, and his testimony was not taken. From the decree against the claimants this appeal was taken, and leave was granted, upon their motion, to take the testimony of the consul, which was taken accordingly in New York after the expiration of his term of office, and after his permanent return to this country from Honolulu. His testimony makes it perfectly plain that Graves, Donnelly, and Bradley deserted at the dates which have been mentioned; that, after their apprehension by the Hawaiian police at his request, they were brought before him, and an examination was had as to the fact and the cause of the desertion. These three men claimed that they were justified in leaving the ship by the unusual and

cruel treatment to which they had been subjected. The consul was satisfied that they had intentionally deserted, that at least two of them had intended to desert before the ship arrived in the port, and that the charges of ill usage were unfounded. The three men repeatedly declined to return to duty, made repeated threats of violence in case they were compelled to return, were abusive to the captain, and at his request were delivered to the custody of the marshal of the Hawaiian Islands. While it is the consul's impression and belief that four men were examined before him, the captain testified that Bauer made no complaint of ill treatment, and he is not sure of Bauer's presence at any examination. He testified before the district court that he never intended to desert; that he was arrested by the police, was taken directly to the police station, was put in jail, and confined for eight days, and was never at the consul's office. The new testimony leaves the evidence in regard to Bauer's desertion much as it was before the district court, and we concur in the finding that the fact of his desertion was not sufficiently established.

Upon the case as it stands upon the new proofs, in this court, with the finding that Graves, Donnelly, and Bradley in fact deserted, and were detained in the station house by the Hawaiian authorities, in consequence of their persistent refusal to return to duty on board the ship, and their threats of violence, there is no room to contend that the proper charges for their arrest and detention, the wages of their substitutes, and the amount which was necessarily paid by the ship to the authorities as a penalty for the willful and malicious breakage of a shop window by Graves, Donnelly, and Bradley on their way to the ship under custody, should not be deducted from their wages. Magee v. The Moss, Gilp. 219, Fed. Cas. No. 8,944. The historical review by the supreme court in Robertson v. Baldwin, 165 U. S. 275, 17 Sup. Ct. 326, of legislation, both ancient and modern, of maritime countries upon the subject of the sailor's contract for services, shows that it has always involved, "to a certain extent, the surrender of his personal liberty during the life of the contract," and that the necessities, and perhaps the safety, of navigation have called into existence legislation by nearly all maritime nations for the purpose of "securing the personal attendance of the crew on board, and for their criminal punishment for desertion or absence without leave during the life of the shipping articles." It is a natural and equitable result that the expenses of this confinement, and the wages of their substitutes while they were refusing to work, should be deducted from their wages.

But, in regard to the fact of Bauer's desertion, the claimants insist, as they did before the district court in regard to the desertion of all the libelants, that as it is a conceded fact that he was arrested and was confined in jail as a deserter, and as section 4600 of the Revised Statutes, as amended by the act of June 26, 1884 (23 Stat. 55), requires the consular officer, "in all cases where deserters are apprehended," to inquire into the facts, and to discharge the seamen if he is satisfied that the desertion was caused by cruel treatment, it must be presumed, until the contrary is shown, that there were proceedings before the consul which were regular, and, inasmuch as he is a special tribunal

for the decision of the question of desertion, the courts of this country will not go behind his action, except where his fraud or malversation is alleged. Section 4600, as amended, is as follows:

"Sec. 4600. It shall be the duty of consular officers to reclaim deserters and discountenance insubordination by every means within their power, and where the local authorities can be usefully employed for that purpose, to lend their aid and use their exertions to that end in the most effectual manner. In all cases where deserters are apprehended the consular officer shall inquire into the facts; and if he is satisfied that the desertion was caused by unusual or cruel treatment, he shall discharge the seaman, and require the master of the vessel from which such seaman is discharged to pay one month's wages over and above the wages then due; and the officer discharging such seaman shall enter upon the crew list and shipping articles the cause of discharge, and the particulars in which the cruelty or unusual treatment consisted, and the facts as to his discharge or re-engagement, as the case may be, and subscribe his name thereto officially."

This section was originally the eleventh and the seventeenth sections of the act of July 20, 1840 (5 Stat. 394). Before this act, consuls of the United States had no statutory power to commit or cause to be committed seamen to prison in a foreign port for desertion. The William Harris, 1 Ware, 367, Fed. Cas. No. 17,695. This statute does not in terms authorize consuls to seek the use of the prisons of a foreign nation. It makes it their duty to obtain the return and restoration of deserters, to get them back to the ship, and to obtain the assistance of local officers for that purpose, and, when the deserters have been apprehended, to inquire into the facts, ascertain the cause of the desertion, and, if the cause was the cruelty of the officers, to discharge the seamen; but if the desertion was without cause, and the seamen refuse to return to the ship, and assert a determination to desert, then it is still his duty to reclaim the deserters and discountenance insubordination, and to that end they will be left in the custody of the local authorities, or will be committed to their custody, so that they may be treated in accordance with the local statutes or regulations upon the subject of the detention of seamen who are at large in the port. Their actual imprisonment, in the absence of local statutes giving foreign consuls such a special power, is by the act of the local magistrates or officers. Judge Curtis, in his examination of this statute in Jordan v. Williams, 1 Curt. C. C. 69, Fed. Cas. No. 7,528, says:

"If the local authorities are to be used, it is a reasonable, not to say necessary, inference, that they are to act in such manner, and by such means, as they ordinarily employ, and the most common and obvious means are the use of a place of confinement under the control of the local government. The power, in the most effectual manner to lend their aid, and use their exertions to employ the local authorities to discountenance insubordination, can hardly be said to be exhausted while the means most usually employed by those authorities have not been used. I think, therefore, that this act conferred upon consuls the power, and made it their duty, where the local authorities can, in their judgment, fairly exercised, be usefully employed to restrain a part or the whole of a crew who are in a state of insubordination, to use their exertions to that end in the most effectual manner, and that this restraint may be exercised by confinement on shore, in such place as is ordinarily used by the local authorities for similar purposes; and, further, that the consul, in so doing, acts as a public officer, upon his official responsibility, intrusted with the power to judge in the first instance of the propriety and fitness of so doing, and subject to his responsibility to any injured by an abuse of his power."

Section 1736 of the Revised Statutes (formerly section 18 of the act of 1840) provides that for malversation or abuse of power in regard to the reclamation of deserters the consul is liable to any injured person for all damage occasioned thereby, so that his action may be examined and reviewed if fraudulent or corrupt. The contention on the part of the appellant is that if an alleged deserter has been arrested, and subsequently was sent to jail, it is to be presumed, until the contrary appears, that the requirements of the statute were complied with, and that there had been an inquiry by the consul into the facts, and a finding that the desertion had been causelessly committed, and, a fortiori, if, after apprehension, and after an inquiry by the consul into the facts, the deserter was detained in jail, it is to be presumed that there was a regular and rightful finding of improper desertion, although there is no record or other oral evidence upon the subject. It is true that by virtue of section 4600 the consular agent is intrusted with large powers in regard to the question of desertion, and that the presumption of regularity and validity attaches to the contemporaneous record of his official proceedings as an examining magistrate, and his records will have credence and receive every reasonable intendment in their favor, when they show that he had jurisdiction, and that the parties were present, and were heard. 1 Tayl. Ev. § 125; The Sachem, 59 Fed. 790. Such a record, while not conclusive (Campbell v. The Uncle Sam, 1 McAll. 77, Fed. Cas. No. 2,372), "creates something more than mere presumption of fact," and will not be overthrown by evidence which merely goes to show that the consul was mistaken (Adams Exp. Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305). But the question is whether, in the absence of any record, or of any testimony from the consul, it will be presumed, from the fact of imprisonment, until the contrary appears, that there had been a finding by the consul of causeless desertion. It cannot be inferred, because a sailor was arrested for desertion in a foreign port, and afterwards went to jail, that the consul inquired into the facts of his desertion and contumacy, because his detention in jail is by virtue of local laws, and does not depend upon the action of foreign consuls. Neither do the naked facts of an appearance before the consul, and a subsequent detention by police officers, raise a presumption of a judicial investigation and a finding of facts by the consul. They simply show that the police kept the sailors in detention. The finding and the action of the consul must be shown by affirmative testimony. When he acts as a magistrate with power to discharge the seaman, or to cause or obtain his imprisonment, his acts and his conclusions should be certified, as in the case of other officers of the same character, by written records, and intendments will not supply the entire absence of proof from the consul's office. After the vessel arrived in the port of New York the owners and the libelants went before the deputy United States shipping commissioner to have their mutual accounts upon this voyage adjusted by him, as an arbiter; but before the investigation was concluded the libelants refused to agree in writing to a submission to him, as required by section 4554 of the Revised Statutes. The deputy commissioner subsequently made a finding in regard to the state of account. An award by the shipping

commissioner is not binding upon the parties. unless made by authority of a submission in writing. The decree of the district court is reversed, and the case is remanded to that court to be proceeded with as follows: To enter a decree dismissing the libel so far as it relates to Donnelly, Graves, and Bradley, with costs of both courts, and to enter a decree in favor of Christian Bauer for $67.62, and interest from June 29, 1896, with his costs in both courts. All concur.