OF THE

## STATE OF ARIZONA

FROM SEPTEMBER 26, 1913, TO MAY 6, 1914.

[Civil No. 1283. Filed September 26, 1913.]

[136 Pac. 273.]

JAMES A. FLEMING, Plaintiff, and L. E. HEWINS, as Executor of the Last Will and Testament of E. B. KNOX, Deceased, Intervener, Appellants, v. THE BLACK WARRIOR COPPER COMPANY AMALGA-MATED, a Corporation, HENRY A. FRY, EARNEST L. TUSTIN, JAMES DOBSON, S. DAVIS WALTON, WM. H. FRANCIS, EDWARD W. PATTON, JOSEPH M. GAZZAM, WALTER LA RUE, JOSEPH RUTTER and CHAS. A. CHASE, Constituting the Board of Directors of said Corporation; W. W. KEEN, JOSEPH WRIGHT, HARRY S. HOPPER, SPENCER D. WRIGHT, and ALBERT LA RUE, as a Reorganization Committee of THE BLACK WARRIOR COPPER COM-PANY AMALGAMATED; SPENCER D. WRIGHT, as Trustee for said HARRY S. HOPPER; SPENCER D. WRIGHT and ALBERT LA RUE, as a Reorganization Committee of THE BLACK WARRIOR COPPER COM-PANY AMALGAMATED; the WARRIOR COPPER COMPANY, a Corporation; HARRY S. HOPPER, SPENCER D. WRIGHT, CHAS. A. CHASE, COR-NELIUS ALEXANDER, Jr., and GEO. P. HAR-RISON, as Incorporators of the WARRIOR COPPER COMPANY; and MEREDITH HANNA and the FIDELITY TRUST COMPANY, a Corporation, Appellees.

1. CORPORATIONS—ACTION BY STOCKHOLDERS—CONDITION PRECEDENT—DEMAND ON CORPORATION—FUTILITY.—A demand upon the corpora-

XV Ariz.—1 (1)

tion that it begin suit to avoid transfers of its property, made in fraud of the rights of the plaintiff stockholders, was not necessary as a condition precedent to bringing the suit themselves, where defendants, the officers of the corporation, had control thereof, and were hostile to plaintiffs, and had themselves caused the transfer to be made.

[As to actions by stockholders on behalf of their corporation, see note in 97 Am. St. Rep. 29.]

2. CORPORATIONS—FOREIGN CORPORATIONS—ACTIONS AGAINST—JURISDICTION.—Where the defendant foreign corporation appeared and submitted itself to the court's jurisdiction, in a stockholders' action to set aside transfers of corporate property as fraudulent, and the property, title to which was involved, was within its jurisdiction, defendant cannot object to the court's assuming jurisdiction over it on the ground that it is a foreign corporation.

3. CORPORATIONS — FOREIGN CORPORATIONS — JURISDICTION.—A foreign corporation engaged in business in this state is estopped to deny its right to do so, in order to defeat the jurisdiction of the courts of this state when dealing with its property within their jurisdiction.

4. CORPORATIONS—ACTION BY STOCKHOLDERS—FRAUDULENT TRANSFER OF PROPERTY.—The complaint, in an action by minority stockholders to set aside a transfer of the corporate property as in fraud of their rights, alleged facts showing a conspiracy by the corporate officers to cause the corporate stock to become worthless by so mismanaging the corporate affairs as to involve the corporation in debt and compel the creditors to resort to the corporate realty, the personalty having been dissipated, and that judgments were rendered against the corporation, and that the managing officers procured executions to be issued and levied on all of its property, which was sold and bought in by them for a nominal price, when they procured a judgment dissolving the corporation in order to prevent redemption of the property sold. *Held,* that the facts alleged sufficiently showed the fraud relied on.

[As to right of stockholder to sue to set aside fraudulent transaction consummated before he became stockholder, see note in Ann. Cas. 1912D, 1100.]

5. LIMITATION OF ACTIONS—FRAUD—RELIEF.—Under Revised Statutes of 1901, paragraph 2949, as amended by Laws of 1903, No. 16, providing that a cause of action for fraud is not deemed to have accrued until the discovery of the facts constituting the fraud, and paragraph 2970, providing that the time of disability by unsoundness of mind shall not be a part of the time limited for the commencement of the action, an action by an executor to set aside as fraudulent a transfer of property of a corporation in which testator

was a stockholder, brought in 1909, was not barred where decedent was of unsound mind when the fraudulent transactions were commenced, and continued so until his death in 1909, when the executor was appointed.

6. EQUITY—LACHES—APPLICATION OF STATUTE OF LIMITATIONS.—Where the circumstances are particularly unconscionable, and the complaining party is also at fault, equity will refuse relief on the ground of laches, though the remedy invoked is not barred by the statute of limitations.

[As to refusal of relief in equity because of laches, see notes in 54 Am. Dec. 130; 2 Am. St. Rep. 795; 23 Am. St. Rep. 148; Ann. Cas. 1914B, 314.]

7. EQUITY—LIMITATIONS—APPLICATION IN EQUITY.—As a rule, a court of equity is bound by the statute of limitations equally with the courts of law.

APPEAL from a judgment of the Superior Court of the County of Gila. A. G. McAlister, Judge. Reversed and remanded.

The facts are stated in the opinion.

Mr. Eugene S. Ives, for Appellants.

Messrs. Alderman & Elliott, for Appellees.

CUNNINGHAM, J.—This action was commenced March 25, 1909, by the appellants as minority stockholders in the Black Warrior Copper Company Amalgamated, a domestic corporation, against the said Black Warrior Copper Company Amalgamated, certain named members of its board of directors, certain of its stockholders, certain named persons comprising a reorganization board, the Warrior Copper Company, a foreign corporation, organized by said reorganization board, the incorporators, of the foreign corporation, Meredith Hanna, and the Fidelity Trust Company, a corporation, as trustee for certain purposes.

The purpose of the action is to have declared void transfers of all the property of the defendant Black Warrior Copper Company Amalgamated to the Warrior Copper Company, because such transfers are in fraud of the rights of the plaintiffs as stockholders of the Black Warrior Copper Company

Amalgamated, a corporation, and in fraud of the rights of the holders of bonds issued by said corporation.

The defendant Warrior Copper Company defends alone. The other defendants make no appearance in the action. The said defendant demurred to the complaint upon the grounds that the facts stated do not constitute a cause of action, and because the court has no jurisdiction over a foreign corporation in this kind of action, because the matters and things alleged are shown to pertain to the internal affairs of this corporation, because the alleged cause of action is barred by laches and the statute of limitations, and because the intervener's complaint does not show capacity to sue, in the absence of a showing that the Black Warrior Copper Company Amalgamated and its managing board were requested to sue the cause of action. The court by a general order sustained the demurrers without a more specific designation of any particular grounds, and, the plaintiff and intervener electing to stand upon their complaints, judgment was rendered for the defendants, and, from which judgment, this appeal is prosecuted.

Appellant James A. Fleming, the original plaintiff, and L. E. Hewins, as executor intervener, only appeal, and assign error separately upon the orders of the court sustaining the demurrers general and special, viz.: Whether the complaint is sufficient to state a cause of action; whether the plaintiff and intervener appellants are barred by laches and by the statute of limitations; and whether the complaints show equity.

In the most general manner we will observe that the plaintiffs show their rights as stockholders, and Fleming's additional interest as a bondholder, in the Amalgamated corporation. The complaint then shows that the defendants in furtherance of a conspiracy, and by the use of the courts and officers of the law, did, upon the face of the transaction, divest, on the twenty-ninth day of June, 1906, the Amalgamated corporation of all its property, and thereby caused the stock and bonds of the plaintiff and others similarly situated to become wholly worthless. The complaint shows that at the time of the transaction complained of the Amalgamated company was possessed of personal property consisting of its capital stock, then in the treasury undisposed of, and

calable, of the reasonable value of $60,000; also fuel oil worth $2,500; also a stock of merchandise of great value; also timber and copper ready for market; also $19,849.75 cash on hand—and this property, with other real property owned by the company, in the aggregate was of a reasonable value of $2,000,000, and the company was indebted in the sum of about $15,000. In furtherance of the said conspiracy, the money and personal property were dissipated, and the real property was allowed to be sold under execution to satisfy the small indebtedness, and about the time of the sale of the real property under execution the Amalgamated company was disincorporated in order to prevent a redemption of the property from the sale, and the defendants organized the Warrior Copper Company, and appointed trustees to, and they did purchase the property at the sale, and conveyed the property to the said Warrior Copper Company.

The complaints show that the parties defendant had at all times complete control of the affairs of the Amalgamated company, that they were hostile to the plaintiff and to the intervener, and were acting upon a preconcerted plan to accomplish the very results complained of, and for plaintiff and the intervener to demand that the Black Warrior Copper Company Amalgamated commence and prosecute this action would be a futile thing which the law does not require. Nothing but a refusal could be reasonably expected to result from such demand.

The defendant Warrior Copper Company has submitted itself to the jurisdiction of the court for all purposes of this action, and it cannot complain if the court exercise that jurisdiction.

The property incidentally involved is within the jurisdiction of the court, and a decree of the court might affect the title to the property involved; therefore the court had jurisdiction to determine the matters, although the defendant Warrior Copper Company is a foreign corporation. This corporation is engaged in its business in Arizona, and is estopped to deny its right to so engage in business, in order to defeat the jurisdiction of the state courts when dealing with its property within that jurisdiction.

The facts and circumstances charged as amounting to fraud briefly summarized are as follows: The Amalgamated

company in December, 1903, was possessed of property of the aggregate value of $2,000,000, and owed but a trifling amount of indebtedness, outside of the debenture bonds. Subsequent to December, 1903, the defendants permitted a judgment for $14,000, and another judgment of $1,100, to be recovered against the Amalgamated company, at the time having cash on hand in the sum of $19,849.75, and other valuable, salable personal property. The directors procured the issuance of executions on the two judgments, and a levy of the executions on the property of the company at a time when the company's treasury contained 12,000 shares of the capital stock of the company worth on the market and readily salable for the sum of $60,000, and permitted, on March 25, 1905, the sheriff to sell property of said corporation of the value of $1,000,000 for a nominal sum of $1,203.25, and other property worth nearly $1,000,000, under execution issued on January 31, 1905, for the sum of $4,877.77. When all the property of the corporation had been either sold by the sheriff or dissipated by defendants, on May 24, 1905, they commenced a proceeding, through a stockholder, having full notice of the facts mentioned, to dissolve the said Amalgamated corporation. On June 24, 1905, by consent of defendants, such dissolution proceedings culminated in a judgment of the court disincorporating said Amalgamated company upon the grounds and for the reason "the said corporation has disposed of all its corporate property, real, personal, and mixed, said property having been sold at execution sale, and that there is not at this time assets or property out of which money may be or could be secured for the purpose of exercising an equity of redemption." One of the members of said reorganization committee bid for, and bought, all the real property of the Amalgamated company, so sold by the sheriff, and on November 18, 1905, demanded of, and on February 7, 1906, the sheriff made his deed to the member of said committee, as trustee, conveying all the property of said Amalgamated company to such party as trustee for said committee. In due time conveyances were made by the members of the said committee to the defendant "the Warrior Copper Company." The result of these transactions was upon their face to divest the Amalgamated company of all its assets for

the inadequate consideration of $6,081.02. It further appears that, in pursuance of the said conspiracy, the plaintiff Fleming was ousted from the office of director and president of the Amalgamated company, because he was a large stockholder of said corporation, and a holder of substantially all the issued bonds. While holding those offices, he was in the position to protect the Amalgamated company and its stockholders.

These facts show an injury to the intervener by reason of a loss of the property upon which the sole value of his stock depends. The circumstances or facts charged, which show fraud, consist of the alleged conspiracy entered into by the defendants having for its object the very purpose of causing the stock of the Amalgamated company to become worthless. The internal affairs were purposely so managed that the company became involved in debt, and, to force the creditors to resort to the real estate, the personal property of the company was sacrificed and dissipated. The judgments were rendered against the company, and the defendants, charged with the management of its affairs, procured executions to be issued and placed in the hands of the sheriff, and caused the sheriff to levy on all the property of the company, and sell the same; the defendants bought the property at the sale for a nominal sum, then procured a judgment of dissolution against the company to prevent a redemption of the property. These are certainly facts which show in what the fraud consists, and how the transaction has been affected by the fraud. *Cochise County* v. *Copper Queen etc. Min. Co.,* 8 Ariz. 221, 71 Pac. 946.

Appellee contends that the claims of Fleming are stale, and ought not be enforced for that reason. We may concede this contention as applicable to the rights of Fleming; but the rights of the intervener estate are controlled by a very different state of facts. On April 26, 1900, E. B. Knox became a stockholder of the Amalgamated company, owning 500 shares of stock until his death, during the year 1909, when the stock passed to the executor of his estate, L. E. Hewins, the intervener. The complaint of intervener Hewins avers that at the time of the several transactions complained of and up to the time of his death said E. B. Knox was

insane, and had no knowledge of the transactions complained of, and that intervener Hewins had no notice or knowledge of any of the facts concerning such several transactions until after the commencement of this action.

Actions for relief on the grounds of fraud or mistake must be commenced within one year after the cause of action shall have accrued, and not afterward; provided, the cause of action in such case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake. Par. 2949, Ariz. Rev. Stats. 1901, as amended by Act No. 16 of the Session Laws 1903.

"If a person entitled to bring any action . . . be at the time the cause of action accrues . . . 2. Of unsound mind; . . . the time of such disability shall not be deemed a portion of the time limited for the commencement of the action . . ." Par. 2970, Ariz. Rev. Stats. 1901.

The complaint avers that the deceased was of unsound mind at the time of the several transactions constituting the fraud, and the disability continued until his death, in the year 1909. The intervener became executor of the estate in 1909. The original action was commenced March 25, 1909. By the provisions of paragraph 2970, *supra,* the statute never commenced to run against the deceased. The complaint avers that the executor did not discover the facts constituting the fraud until after this action was commenced, when the complaint in intervention was filed. The complaint is not subject to a demurrer presenting the statute of limitations. On its face the cause of action is not barred.

Equity will, under circumstances especially revolting to a sense of justice, refuse relief where the remedy invoked is not barred by the statute of limitations; but in such case the complaining party is not wholly free from fault, and the rule of laches is applied operating in the nature of an estoppel. No such rule can justly be applicable to the facts of this case. A court of equity is equally bound with a court of law by the statute of limitations.

The complaint of the intervener is not subject to the vices contended for, and the court erred in sustaining the several demurrers of the defendant.

The judgment is reversed and the cause remanded, with instructions to the superior court of Gila county to overrule the demurrers and proceed with the cause according to law.

Reversed and remanded.

FRANKLIN, C. J., and ROSS, J., concur.

Application for rehearing denied.