SILVAS v. ARIZONA COPPER CO., Limited.

(District Court, D. Arizona. April 10, 1914.)

1. COURTS (§ 357*)—PROCEDURE OF STATE COURTS—COSTS.

Act Cong. July 20, 1892, c. 209, 27 Stat. 252 (U. S. Comp. St. 1901, p. 706), providing for waiver of security for costs and the right to sue in forma pauperis, covered the whole subject, and was exclusively applicable to the federal courts, to which Act Ariz. April 1, 1913, § 257, providing that no guardian appointed under the laws of the state should be required in any case to give security for costs, did not apply by virtue of the Conformity Act (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 938; Dec. Dig. § 357.*]

2. COSTS (§ 132*)—SECURITY FOR COSTS—FEDERAL COURTS—STATUTES.

Act Cong. July 20, 1892, c. 209, § 1, 27 Stat. 252 (U. S. Comp. St. 1901, p. 706), provides that any citizen entitled to sue in any federal court may commence and prosecute to conclusion any such suit or action, without being required to prepay fines or costs, or give security therefor, or after bringing suit or action, and filing in the court a statement under oath in writing that because of his poverty he is unable to pay the costs, or to give security, and believes that he is entitled to the redress he seeks by such suit or action, setting forth briefly the nature thereof. *Held*, that where plaintiff, desiring to sue in forma pauperis in the federal court, has contracted to pay his counsel a sum equal to 50 per cent. of the recovery as a fee for their services, they thereby become parties in interest, and an order cannot be granted authorizing plaintiff to sue in forma pauperis, or relieving him from executing a bond for costs, unless it appears that such counsel are also unable to pay costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 504–513, 516; Dec. Dig. § 132.*]

3. LIMITATION OF ACTIONS (§ 70*)—STATUTES—REPEAL—EXCEPTIONS.

Laws Ariz. 1903, No. 16, providing that certain actions, including those based on fraud, shall be barred in one year, and repealing Civ. Code Ariz. 1901, par. 2949, and all other acts and parts of acts in conflict therewith, did not repeal paragraph 2970, providing that if a person is an infant, of unsound mind, or imprisoned at the time of disability, the time of such disability shall not be deemed a portion of the time limited for the commencement of the action, but such person shall have the same time after the removal of his disability that is allowed to others by the provisions of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

the title; there being no necessary conflict between the act of 1903 and such section.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 382–386; Dec. Dig. § 70.*]

At Law. Action by Richard Silvas, an infant, by Ramon Silvas, his guardian ad litem, against the Arizona Copper Company, Limited. On motions to compel plaintiff to give security for costs and to make his complaint more definite and certain, and on demurrer raising the statute of limitations. Motions granted, and demurrer overruled.

L. Kearney, of Clifton, Ariz., and Wm. M. Seabury, of Phœnix, Ariz., for plaintiff.

W. C. McFarland, of Clifton, Ariz., for defendant.

SAWTELLE, District Judge. The defendant in this cause has made and filed its motion that plaintiff be required to give security for costs before proceeding further with the trial, and in support of said motion filed an affidavit of its cashier, alleging that neither the said Richard Silvas nor the said Ramon Silvas, guardian ad litem of plaintiff, has property out of which the costs of this action could be made by execution. Thereupon the affidavits of plaintiff and his guardian ad litem were filed. These affidavits show the poverty of these parties, but do not contain an averment that no person interested in the cause was able to secure the costs.

It was stated in open court by counsel for defendant, and not denied by plaintiff or his counsel, that a notice had been served on defendant that counsel for plaintiff had a contract with him, by the terms of which they were to be paid a sum equal to 50 per cent. of the recovery as a fee for their services.

[1] There was filed by plaintiff an objection to the motion to require security, in which it is contended that plaintiff "ought not by right to be required to give security for costs, because under the provisions of a statute of Arizona, entitled 'An act to prescribe the procedure in civil actions,' approved April 1, 1913, being Senate Bill No. 90, and by section 257 of said statute, it is provided that 'no guardian shall be required in any case to give security for costs,' and there is no statute of Congress on the subject." That statute is as follows:

"Sec. 257. Neither the state, nor any county thereof, nor any state board or commission or state officer in his official capacity nor any executor, administrator or guardian, appointed under the laws of this state, nor any trustee in bankruptcy, shall be required in any case to give security for costs."

The defendant contends that such statute has no binding force on this court, for the reason that Congress has legislated on the subject, and this court must look to the act of Congress and disregard the act of the state Legislature.

By Act of Congress of July 20, 1892 (27 Statutes at Large, 252, c. 209, Fed. Stat. Anno. vol. 2, p. 294), it is provided:

"Section 1. That any citizen of the United States, entitled to commence any suit or action in any court of the United States, may commence and prosecute to conclusion any such suit or action without being required to

prepay fees or costs, or give security therefor or after bringing suit or action, upon filing in said court a statement under oath, in writing, that, because of his poverty, he is unable to pay the costs of said suit or action which he is about to commence, or to give security for the same, and that he believes he is entitled to the redress he seeks by such suit or action, and setting forth briefly the nature of his alleged cause of action.

"Sec. 2. That after any such suit or action shall have been brought, or that is now pending, the plaintiff may answer and avoid a demand for fees or security for costs by filing a like affidavit, and willful false swearing in any affidavit provided for in this or the previous section, shall be punishable as perjury is in other cases.

"Sec. 3. That the officers of court shall issue, serve all process, and perform all duties in such cases, and witnesses shall attend as in other cases, and the plaintiff shall have the same remedies as are provided by law in other cases.

"Sec. 4. That the court may request any attorney of the court to represent such poor person, if it deems the cause worthy of a trial, and may dismiss any such cause so brought under this act if it be made to appear that the allegation of poverty is untrue, or if said court be satisfied that the alleged cause of action is frivolous or malicious.

"Sec. 5. That judgment may be rendered for costs at the conclusion of the suit as in other cases: Provided, that the United States shall not be liable for any of the costs thus incurred.

The question here presented is: Under which of these statutes must the court proceed?

It is insisted by the plaintiff that section 914, Revised Statutes of the United States (U. S. Comp. St. 1901, p. 684), commonly called the "Conformity Statute," which provides that the Circuit and District Courts of the United States, in matters of practice, pleading and forms, and modes of proceeding in actions at law, shall conform as near as may be to the state practice, makes the state statute obligatory on this court, and the contention of the defendant is that the act of Congress of July 20, 1892, alone can be followed.

We think the latter contention must prevail. The congressional act referred to is in general and broad terms, and covers the whole subject. In Lange v. Union Pacific R. R. Co., 126 Fed. 338, 62 C. C. A. 48; the Circuit Court of Appeals of the Eighth Circuit in discussing this question use this language:

"Moreover, where Congress has legislated generally upon any such subject, the rules of the state practice in respect thereof are superseded, and the extent and limitations of the power of the courts of the United States are to be found in the congressional enactments, and are not in the laws of the states."

The conformity statute has received repeated construction by the Supreme Court of the United States. In Railroad Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898, the court says, in speaking of the effect of that statute:

"This direction that the proceedings in the Circuit Court of the United States shall 'conform as nearly as may be to the practice in the courts of the state' must, of course, like the corresponding direction as to practice, pleadings, and procedure in section 914 of the Revised Statutes, give way whenever to adopt the state practice would be inconsistent with the terms, defeat the purpose, or impair the effect, of any legislation of Congress. Luxton v. North River Bridge Co., 147 U. S. 337, 13 Sup. Ct. 356, 37 L. Ed. 194; Indianapolis & St. Louis Railroad v. Horst, 93 U. S. 291, 23 L. Ed. 898; Chateaugay Co., Petitioner, 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508; Southern Pacific Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942."

See, also, Chappell v. United States, 160 U. S. 512, 16 Sup. Ct. 397, 40 L. Ed. 510.

In Shepard v. Adams, 168 U. S. 618, 18 Sup. Ct. 214, 42 L. Ed. 602, the court said that uniformity of practice was left by the act of Congress (section 914, Revised Statutes) to be attained largely through the discretion of the national courts.

[2] It being thus evident that the law of Congress must furnish the standard by which this motion must be weighed, it becomes material to decide what is required by that act. There is now on file in this case no affidavit from the plaintiff such as is required by the statute, and as the record now stands the order requiring security must be granted; but, as the plaintiff may again make application, we will consider what is required under this statute to authorize the court to excuse him from giving security.

The requisites of the affidavit under this act were considered in the case of Boyle v. Great Northern Ry. Co. (C. C.) 63 Fed. 539. In that case and in the case at bar the motion and proof disclose that the plaintiff's counsel had undertaken to conduct the case on a contingent fee. The court says:

"There is no question but what a poor person can prosecute his cause and obtain a full hearing, but at the same time litigation is not to be fostered and encouraged by allowing the plaintiff to evade any expense which he makes. That is a duty of any party having sufficient means, and is not to be evaded. If he is not able to pay costs or give security for them, he can have justice without it. But a person who acquires by contract an interest in any litigation, and a right to share in the fruits of a recovery, and who is not entitled to sue in forma pauperis, cannot be permitted, under cover of the name of a party who is a poor person, to use judicial process and litigate at the expense of other people. I think it does make a difference whether the plaintiff has made a contract with his counsel for their compensation. It makes this difference: That, after a contract has been made with counsel for a pecuniary interest in a lawsuit, the case is carried on partially for their benefit; and, if they are able to pay the expenses of the litigation, it is unjust for the court to allow the litigation to go on for their benefit, without expense, on the pretense that the plaintiff is unable to pay. I shall require a showing that the plaintiff is unable to pay or secure the costs, and that there is no person interested, by contract or otherwise, in the cause of action, or entitled to share in the recovery, who is able to pay or secure the costs. I think that such a rule is in keeping with the meaning and spirit of this law, and it is founded in reason."

In Feil v. Wabash R. Co. (C. C.) 119 Fed. 490, it was disclosed that the case was being prosecuted by the plaintiff's attorney on contingent fee. Speaking of the effect of such contract or contingent fees on the right of the plaintiff to be relieved of costs under the act of July 20, 1892, the court held that in such cases the plaintiff represents, not only her own interest, but also that of the attorneys in the case, and she sues for herself and as trustee for others, and, standing in this position, she could not be held to be poor within the meaning of the law, unless the beneficiaries are poor also. The court concludes:

"No petition to sue as a poor person can avail, unless it discloses that all the beneficiaries, as well as the nominal plaintiff, come within the purview of the act."

In Reed v. Pennsylvania Co., 111 Fed. 714, 49 C. C. A. 572, the Circuit Court of Appeals, speaking through Justice Lurton, now of

the Supreme Court, uses this language as to what an affidavit under this law must disclose:

"The affidavit in this case is defective in this: The suit is that of the widow and administratrix of Frank Reed, who sues for damages consequent upon the tortious killing of her intestate and husband. Under the Ohio statute authorizing such an action, the damages recoverable are for the benefit of the widow and children of the deceased, and they are the real parties in interest. Bates' Ann. St. Ohio, § 6135. The beneficiaries and real parties in interest are therefore the widow and the children of the deceased. The affidavit shows sufficiently the poverty of the widow, but is defective in not making a like showing in behalf of the children of the deceased. Boyle v. Railroad Co. (C. C.) 63 Fed. 539. It may be that the estate of the deceased is able to prepay the costs of the writ of error, or secure the same. If so, the act would have no application. The affidavit makes no showing as to the value of the estate of which the plaintiff is administratrix. The application is for these reasons denied but without prejudice to its renewal upon an affidavit showing that the estate of the deceased, as well as the beneficiaries, is unable to pay the costs or give security."

In the case of Phillips v. Louisville & N. R. Co. (C. C.) 153 Fed. 795, is a full and able discussion of the objects to be attained by this statute, the following extracts from which will be of interest as a clear statement of the law:

"This statute is of a charitable and beneficent nature. Its sole purpose is to enable persons, who in good faith are unable, on account of poverty, to prosecute any suit or action in the courts of the United States, to obtain a fair chance to have the rights adjudicated. It is not intended that the statute should be used directly or indirectly to benefit those who are able to prosecute their suits. The citizen seeking the benefit of the statute, and making the affidavit of poverty required thereby, must of necessity be the only person benefited by his cause of action. It surely was never intended by the statute that two or more persons should be interested financially in the result of a suit or action brought, and that, if one of them happens to be without means, this one can be permitted to make an affidavit of poverty and secure the benefits of the statute for the other parties to the suit, who are able to prosecute same, even though they may not appear by name as parties. The admission by the attorneys for the plaintiff that they were interested to the extent of one-third of any amount that might be recovered made them financially interested in the result of the lawsuit, and, unless they, too, could make and file an affidavit as to their poverty, the plaintiff in this cause could not obtain the benefit of the statute."

The showing here made not being sufficient to authorize the court to relieve the plaintiff from securing the costs, it is ordered that the plaintiff give security for costs in the sum of $200, to be approved by the clerk of the court, within 30 days from this date.

The defendant has also filed a plea of the pendency of another action in the superior court in and for the county of Greenlee, state of Arizona, between the same parties to this action, and for the same cause of action as that set forth in plaintiff's complaint herein. No answer has been filed to this plea. On the hearing, counsel for the defendant did not call the case to the attention of the court, or ask any action or ruling thereon. The court under such circumstances considers the plea abandoned, and no further action of the court is necessary to dispose of it.

Defendant also filed a motion to require the plaintiff to make his complaint more definite and certain. The plaintiff insists that the

motion has been abandoned by failure to have it heard and decided within the time for answer, and cites paragraph 475, Rev. St. Ariz. 1913.

The complaint in this case was filed October 3, 1913, and the motion to make more definite and certain on October 25th of the same year. Said motion was filed within the time required by said statute; but since its filing, and up to the date of the hearing of said motion, the entire time of the court has been taken up in the trial of a heavy criminal calendar, and on account of the pressure of this business it has been impossible for the court to devote any considerable amount of time to the hearing of preliminary matters, which under ordinary conditions would have been reached and decided. Under these conditions, for which neither the defendant nor the court was responsible, it is deemed fair to hear the motion on its merits.

The complaint was rather loosely drawn, and contains some repetitions, and some of its averments would appear to be surplusage, and in view of the extreme difficulty, if not the impossibility of formulating the issues under the complaint as drawn, and the fact that many of these allegations as to what caused the accident might be more clearly and distinctly set forth, the motion to make more definite and certain will be granted.

[3] The court having determined that the plaintiff must give security for costs and amend his complaint, it is not necessary to decide some of the demurrers filed. Demurrers which raise the statute of limitation will apply to any complaint, on the facts disclosed, and it is deemed best to decide the contention thus raised.

The demurrer to the complaint is based on the idea that Act No. 16, Session of 1903, was an independent enactment on the subject-matter embraced by it, and that section 2 of that act repeals section 2949 of the Revised Statutes. It is insisted that there is no saving clause in this act, and that section 2970 of the Revised Statutes has no application to the limitation enacted by this statute, and that consequently the minority of the plaintiff will not prevent the bar of the statute.

It is a rule of construction that the whole act must be looked to in arriving at its meaning. The act under question is peculiarly drawn. The same number (2949, section 15), as it appeared in the Revised Statutes, is at the commencement of section 1 of the act. These figures would be meaningless, if they did not indicate the legislative intent to have the act constitute a part of the Revised Statutes, in place of the section thus marked which was contained in them before. The evident intent of the Legislature was to amend and complete a system of limitations for personal actions by the addition of the matters wherein this act differs from section 2949 as it then stood, which are included in subdivisions 4 and 5 of the act. There is nothing in the act which shows any intent to repeal the exceptions declared by section 2970 of the Revised Statutes, and there is no necessary conflict between the provisions of the act and that section. It was only laws which are inconflict with the act and section 2949 as it then stood which were repealed.

We think, in view of the fact that it would apply a rule of personal actions which is in conflict with the declared policy of the state as to limitations of actions, except those relating to land, and the further fact that, while repealing 2949 as it then· stood, the repealing clause contains no specific mention of section 2970, a field of operation for all of these sections is afforded by holding that the act was in effect an amendment of section 2949 as it then stood. The Supreme Court of Arizona had this question before them in the case of Fleming v. Black Warrior Copper Co., Amalgamated, et al., 136 Pac. 273, and it was there held that this legislation amended section 2949· of the Revised Statutes of 1901, and section 2970 is expressly referred to as in force and as controlling.

This decision, in the opinion of this court, asserts the law correctly, and the said demurrer is overruled.