# BREEDI

## *v.*

# AMERICAN SCHOONER MUKILTEO.

San Juan, Admiralty, No. ——.

WAGES OF FOREIGN SEAMAN.

Sailors—Costs on Rule to Show Cause.

1. It is not necessary under Rev. Stat. § 4546, for a sailor to file a stipulation for costs before the rule of the ship to show cause as to wages.

Same—Judge 3 Miles Away.

> 2. The statute does not require the sailor to apply to a local offi-
> cial, but he may, if he prefers, apply to a judge residing more than
> 3 miles from the vessel.

Sailor's Discharge—Essence of Contract.

> 3. A sailor not reporting for duty upon notice may properly be
> discharged by the captain.

Opinion filed January 7, 1918.

---

*Mr. J. R. F. Savage* for petitioner.

*Mr, O. B. Frazer* for master of schooner.

HAMILTON, Judge, delivered the following opinion:

This is a petition filed under Revised Statutes, § 4546, Comp. Stat. 1916, § 8335, by which an alien serving as a sailor on an American vessel seeks to have the master of the Mukilteo show cause why process should not issue against the vessel for wages claimed to be withheld from the seaman. It was stated upon the argument that the two other seamen stand in the same category, and will act in accordance with the decision herein.

1. The first question which arises is whether the petitioner must file the usual stipulation for costs. It is argued that the Statute of July 20, 1892, 27 Stat. at L. 252, chap. 209, as amended in 1910, 36 Stat. at L. 866, chap. 435, Comp. Stat. 1916, § 1626 (2 Fed. Stat. Anno. 647), does not apply to an alien, and that court rules cannot extend three provisions of the statute beyond their face. There is no doubt that the

Breedi v. The Mukilteo.

practice in admiralty is to exempt seamen from giving security on account of their inability to do so. The Shelbourne, 30 Fed. 510, 511. It is also suggested that an alien enlisting on an American ship becomes an American seaman for some purposes. Re Ross, 140 U. S. 453, 479, 35 L. ed. 581, 591.

It would seem that the provision of Magna Charta, cap. 29, against "selling or denying justice," is not to be construed as forbidding the advance payment of court costs. The theory is that fees and costs have nothing to do with the trial of the case, and therefore with the course of justice, but are the means of livelihood of the officers to whom they are assigned by law and expenditures of the opposite party in the suit. The general practice in Federal courts is for such fees and costs to be provided for in advance, and the Act of 1892 as amended does not exempt even persons suing in forma pauperis from paying these fees and costs when they get in funds, as through a recovery in a particular case, but only prevents such fees and costs from being exacted or provided for in advance. The rule does not go to the extent of requiring officers to expend money on behalf of the party, even after an order of court allowing suit in forma pauperis. Columb v. Webster Mfg. Co. 76 Fed. 198. The affidavit of poverty required extends even to the attorney when he is interested because of the contingency of his own fee. Boyle v. Great Northern R. Co. 63 Fed. 539; Silvas v. Arizona Copper Co. 213 Fed. 504.

But it is not necessary at present to decide the point as presented. The proceeding at bar is not a suit or action, civil or criminal, in any court of the United States under the Act of 1892. No judgment can be rendered on this application against the vessel or against the master or against the owners

for the payment of wages. This is a preliminary inquisition to determine whether there should be any suit or action, and under the general principle of law favoring seamen as not being persons of means the court has no doubt of the propriety of allowing this proceeding without security for general costs. It is understood that the individual costs are paid for as they arise. It would seem to be a hardship not required by statute to compel a seaman, especially where he files an affidavit of poverty, to make a deposit or give security for costs of a suit which may never be brought. Benedict, Admiralty, 4th ed. p. 294, note 49.

2. It is further urged that under the Revised Statutes, § 4546, Comp. Stat. 1916, § 8335, the district judge for the judicial district where the vessel is has no jurisdiction in the premises, because his residence is more than 3 miles from the place where the vessel is; and that in such case the proceeding must be had before a judge, justice of the peace, or commissioner of the court. But there is no showing made that there is any judge, justice of the peace, or commissioner within 3 miles of where the vessel is, or anywhere, having jurisdiction over the vessel in question. The intent of the statute was to offer a speedy means of redress to sailors, and it is to be construed as giving sailors the right to apply to a judge, justice of the peace, or commissioner, where the district judge resides more than 3 miles away from the ship; but if the sailor happens to be near the district judge, no reason appears why the general jurisdiction of the judge over the whole district shall not apply in this as well as in any other case. It might well be that the judge could remit the sailor to the local authority if he saw proper, but in the case at bar he has not done

Breedi v. The Mukilteo.

so. So literal a construction of the statute might in some cases defeat the very end aimed at, that is, the protection of seamen against improper action of a master of his vessel, and will not be adopted by this court. If a case arises of oppression of a ship by a seaman through malicious action at a distance from the berth of the vessel, other steps might be necessary. At least such an improbable case has not arisen here.

3. Coming to the merits of the application, it seems that the petitioner Breedi was drunk at Balboa, but no action was had by the master beyond noting it upon the log (Rev. Stat. § 4290, Comp. Stat. 1916, § 8036). The master testified that the sailor was drunk at Ensenada, although not logged therefor, and failed to report to the ship in time for sailing on December 12, although notified of the hour; and in fact the ship lost three quarters of an hour, blowing and waiting for him. Breedi claims to have been at a place not more than five minutes from the ship and did not hear the whistle. He did report to the ship upon her return some days later from the voyage to La Romana, but the master refused to receive him on board and discharged him before the shipping commissioner, leaving his wages in the hands of that official. Breedi declined and still declines to receive the money, claiming that the discharge is improper. It seems that the captain brought a charge of desertion, but that the commissioner did not sustain it, and the captain thereupon discharged Breedi for drunkenness and not reporting for duty.

It is in evidence that the ship was bringing cane from Santo Domingo to be ground at Guanica, and it is a matter of public knowledge that sugar is in great demand both at New York and in Europe for war purposes. Anything that

X. Porto Rico.—17.

Breedi v. The Mukilteo.

tends to hinder the manufacture of sugar must as far as possible be avoided. On the evidence submitted the court is of the opinion that Breedi was either actually notified of the time when the boat would leave, or had or should have had ample notice through the whistle testified to. Whether he was drunk or not need not be decided, it is probable that at least he was drinking, and that it was due to this that he missed the boat. His discharge was before a United States commissioner, and under Revised Statutes, § 4549, Comp. Stat. 1916, § 8338, was proper. The action of the commissioner was not strictly that of an inferior court, but was at least that of an administrative officer to whom the matter was committed by law, and prima facie his decision should be respected. The court is not only not satisfied upon the evidence adduced that he made a mistake, but is satisfied that he was right, and will not disturb his action.

It is true that the discharge by a commissioner operates as a release only when accepted by the seamen (Rev. Stat. § 4552, Comp. Stat. 1916, § 8347), and that the action has the force of a judgment only when the question in controversy is by agreement of both parties submitted to him in writing (Rev. Stat. § 4554, Comp. Stat. 1916, § 8343). The W. F. Babcock, 29 C. C. A. 514, 57 U. S. App. 46, 85 Fed. 978. Claims for seamen's wages are favored in admiralty. For some offenses the law provides that the sailor shall be docked in his wages, rather than discharged. 35 Cyc. 1189, 1217. This follows the general legal principle that, for violation of a contract not going to its essence, damages will lie, in the case of seamen forfeiture pro tanto of wages. Rev. Stat. § 4528, Comp. Stat. 1916, § 8319. On the other hand for the viola-

Breedi v. The Mukilteo.

tion of a contract going to its essence the party injured has the right of cancelation. A sailor's contract with his ship and its owners is evidenced by what are called the "shipping articles," entered into in form provided by law before the shipping commissioner at the port of shipment. Rev. Stat. § 4511, Comp. Stat. 1916, § 8300, Rev. Stat. § 4612, Comp. Stat. 1916, § 8392, schedule A. Drunkenness in sailors, particularly if repeated, and failure to report for duty, must be taken to be a substantial violation of the shipping articles, and would justify discharge. The general subject of merchant seamen, title LIII. of the Revised Statutes, shows studious desire on the part of the government to protect seamen more than any other class of the community. Nevertheless there can be but one master of a vessel, and it is specially important at this time that his authority be unimpaired unless shown to have been arbitrarily exercised. Such is not the case at bar. The discharge must be held to have been properly made. There is no question as to the correctness of the amount of wages paid over to the commissioner.

It follows that the showing made by the master in response to the rule to show cause is sufficient. The rule therefore is discharged.

It is so ordered.